**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT JOSEPH, | : | **Hon. Susan D. Wigenton** |
| | : | |
| Petitioner, | : | Civil No. 09-3891 (SDW) |
| | : | |
| v. | : | |
| | : | |
| DONALD MEE, et al., | : | **O P I N I O N** |
| | : | |
| Respondents. | : | |

**APPEARANCES**:

      ROBERT JOSEPH, #979386B
      East Jersey State Prison
      Lock Bag R
      Rahway, New Jersey 07065
      Petitioner Pro Se

      LEEANN CUNNINGHAM, Assistant Prosecutor
      ESSEX COUNT PROSECUTOR
      Essex County Veterans Courthouse
      Newark, New Jersey  07102
      Attorneys for Respondents

**WIGENTON**, District Judge

      Robert Joseph ("Petitioner") filed a Petition for a Writ of Habeas Corpus, pursuant to 28

U.S.C. § 2254, challenging a judgment of conviction entered in the Superior Court of New Jersey,

Essex County, on March 23, 2001, after a jury found him guilty of first-degree aggravated

manslaughter and second-degree possession of a weapon for an unlawful purpose.  Respondents

filed an Answer arguing that the Petition should be dismissed on the merits.  Petitioner filed a

Reply.  For the reasons expressed below, this Court will dismiss the Petition with prejudice and

deny a certificate of appealability.

# I.  BACKGROUND

After a jury sitting in the Superior Court of New Jersey, Essex County, Law Division, found Petitioner guilty of first-degree aggravated manslaughter and second-degree possession of a weapon for an unlawful purpose, on March 23, 2001, Judge Donald S. Goldman sentenced Petitioner to an aggregate term of 24 years in prison with a parole ineligibility period of 20 years, four months, and 24 days, pursuant to the No Early Release Act.  See State v. Joseph, Docket No. A-684-01T4 slip op. at pp. 1-2 (N.J. Super. Ct., App. Div., Mar. 6, 2003).  The Law Division summarized the facts as follows:

> Two men, the Petitioner and co-defendant Lonnie Barber, came out of a Burgundy Buick Regal with tinted windows and attacked Ronald Gordon while he was walking with three women, including his sister, in the early morning of February 13, 1999.  The Petitioner struck Gordon on the side of the head with a handgun, knocking him to the ground.  While Gordon lay on the ground dazed, the Petitioner shot him four times in the chest and right arm.  The Petitioner killed Gordon as revenge for a prior confrontation during which Gordon had punched the Petitioner in the face.
>
> Mr. Gordon's sister pleaded with the Petitioner and Lonnie Barber not to shoot Gordon and even tried to wrestle with them, but failed to stop the attack.  She identified them as the assailants.  The other evidence came from Nasir Turner who said that after the incident the Petitioner confessed to shooting the "kid" who had jumped him earlier.  Nakia Turner, who had intimate relationships with both the Petitioner and Gordon, described the earlier incident in which Gordon had hit the Petitioner.  Lonnie Barber, who had no apparent motive to kill Gordon and who did not make any admission to Nasir Turner, was acquitted of all charges.  The Petitioner was convicted of aggravated manslaughter.

State v. Joseph, Ind. No. 99-07-2629 order at p. 4 (Docket Entry #2 at p. 32.)

2

Petitioner appealed.  In an opinion filed March 6, 2003, the Appellate Division of the New Jersey Superior Court affirmed the conviction and sentence.  Id.  On June 23, 2003, the New Jersey Supreme Court denied certification.  See State v. Joseph, 177 N.J. 224 (2003) (table).

On or about January 26, 2004, Petitioner filed a pro se petition for post-conviction relief and a memorandum of law in the Law Division.  Appointed counsel filed an amended petition raising additional issues.  By Order and opinion filed February 15, 2007, Judge Goldman denied post-conviction relief after conducting an evidentiary hearing.  Petitioner appealed, and in an opinion filed January 22, 2009, the Appellate Division affirmed the order denying post-conviction relief.  See State v. Joseph, Docket No. A-0333-07T4 slip op. (N.J. Super. Ct., App. Div., Jan. 22, 2009).  On April 23, 2009, the New Jersey Supreme Court denied certification.  See State v. Joseph, 199 N.J. 132 (2009) (table).

Petitioner executed the § 2254 Petition before this Court on July 31, 2009.  After this Court notified Petitioner of his rights pursuant to Mason v. Myers, 208 F. 3d 414 (3d Cir. 2000), Petitioner elected to proceed with the Petition.  The Petition presents the following grounds:

> Ground One:  PETITIONER WAS DENIED DUE PROCESS TO A FAIR TRIAL BY THE DECISION OF THE TRIAL COURT TO PRECLUDE THIRD-PARTY GUILT EVIDENCE.
>
> Ground Two:  PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSER, WHERE THE JURY HEARD THAT JALEEL FRAZIER HAD GIVEN AN INCULPATORY POLICE STATEMENT AGAINST PETITIONER, AND WHERE FRAZIER DID NOT TESTIFY.
>
> Ground Three:  PETITIONER WAS DENIED DUE PROCESS BY A TAINTED IDENTIFICATION PROCESS AND WHERE COUNSEL FAILED TO REQUEST A WADE HEARING.

Ground Four:  THE SENTENCE WAS IMPOSED AGAINST PETITIONER IN AN UNCONSTITUTIONAL MANNER, WHERE THE PROSECUTION DID NOT PROVIDE THE REQUIRED NOTICE AS PROVIDED BY THE STATUTE AND COURT RULES.

Ground Five:  PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT OF THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AND DURING APPEAL IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

(Docket Entry #2, pp. 9, 11, 12, 13, 15.)

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition as follows:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).  Specifically, § 2254(d) provides:

4

(d) An application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court decision is an 'adjudication on the merits,' reviewed under the deferential standard of § 2254(d), where it is 'a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.'" Simmons v. Beard, 581 F. 3d 158, 166 (3d Cir. 2009) (quoting Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004), rev'd on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005) (internal quotation marks and citation omitted)); see also Rolan v. Vaughn, 445 F. 3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412; see also Carey v. Musladin, 549 U.S. 70, 74 (2006) ("federal habeas relief may be granted here if the California Court of Appeal's decision was contrary to or involved an unreasonable application of this Court's applicable holdings").  A court must look for "the governing legal principle or principles set forth by

5

the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). See also Thomas v. Carroll, 581 F. 3d 118, 124 (3d Cir. 2009) (State court's determination was not contrary to federal law, as required for habeas relief, where Supreme Court never faced the precise issue presented in the case). Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.[1] Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[2] Id. at 409-10; see also Thomas v. Varner, 428 F. 3d 491, 497 (3d Cir. 2005). "[T]his Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been

---

[1] See also Wright v. Van Patten, 552 U.S. 120, __, 128 S. Ct. 743, 747 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law") (citation and internal quotation marks omitted).

[2] "[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent." Marshall v. Hendricks, 307 F.3d 36, 71 n.24 (3d Cir. 2002) (citations and internal quotation marks omitted).

squarely established by this Court." See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009).

Moreover, "a court that unreasonably extends a rule in a new context or, in the alternative,

unreasonably fails to extend a rule may also be deemed to unreasonably apply the correct rule."

Thomas, 581 F. 3d at 124-25 (quoting Fischetti v. Johnson, 384 F. 3d 140, 148 (3d Cir. 2004)).

However, "[i]f the petitioner's legal claims were presented but not addressed by the state

courts, 28 U.S.C. § 2254(d) does not apply, and federal courts undertake a de novo review of the

claim." Rolan, 445 F. 3d at 678.  As the New Jersey courts adjudicated petitioner's claims on the

merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28

U.S.C. § 2254(d).

### III.  DISCUSSION

A. Due Process - Right to Present Evidence

In Ground One, Petitioner asserts that the preclusion of exculpatory evidence by the trial

court violated due process.  As factual support, Petitioner asserts:

> The defense sought to introduce evidence of a similar police incident
> report, a tow truck report, a photograph of the car used in the similar
> incident and testimony of two investigators, where a Black male
> fitting petitioner's general description approached a man sitting on a
> crate outside a supermarket, pumped bullets into the man and fled in a
> car similar to the car described herein as Barber's, burgundy with
> tinted windows.  The court denied the request.  The Appellate
> Division affirmed because the car was not the same model year and
> the third-party crime occurred five months after the crime which
> petitioner was charged.  The Appellate Division also found that the
> crime was "completely unknown" and was not linked to any
> circumstances in the instant matter.
>
> Petitioner submits that the State Courts adjudication of the claim was
> unreasonable based on the facts.  It is well established that a defendant
> is entitled to prove his innocence by showing that someone else
> committed the crime.  Chambers v. Mississippi, 410 U.S. 284 (1973).

7

> See also <u>Holmes v. South Carolina</u>, 547 U.S. 319 (2006) . . . <u>Taylor v. Illinois</u>, 484 U.S. 400, 408 (1988) . . . <u>Pennsylvania v. Ritchie</u>, 480 U.S. 398 (1987).

(Docket Entry #2 at pp. 9-10.)

The State argues that the evidentiary ruling was proper under the New Jersey Rules of Evidence, and that this issue does not present a constitutional claim.

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 438 n.6 (1983). The admissibility of evidence is generally a question of state law which is not cognizable under habeas review. <u>See Keller v. Larkins</u>, 251 F.3d 408, 416 n.2 (3d Cir. 2001). However, "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." <u>Holmes v. South Carolina</u>, 547 U.S. 319, 324 (2006) (quoting <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986)). "This right is abridged by evidence rules that 'infring[e] upon a weighty interest of the accused' and are 'arbitrary or disproportionate to the purposes they are designed to serve.'" <u>Holmes</u>, 547 U.S. at 324 (quoting <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998)). The Supreme Court explained in <u>Holmes</u>:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury . . . . Plainly referring to rules of this type, we have stated that the Constitution permits judges to "exclude evidence that is repetitive . . .

, only marginally relevant or poses an undue risk of harassment, prejudice [or] confusion of the issues." Crane, U.S., at 689-690 . . .

A specific application of this principle is found in rules regulating the admission of evidence proffered by criminal defendants to show that someone else committed the crime with which they are charged. See , e.g., 41 C.J.S., Homicide § 216, pp. 56-58 (1991) ("Evidence tending to  show the commission by another person of the crime charged may be introduced by accused when it is inconsistent with, and raises a reasonable doubt of, his own guilt; but frequently matters offered in evidence for this purpose are so remote and lack such connection with the crime that they are excluded"); 40A Am. Jur. 2d, Homicide § 286, pp. 136-138 (1999) ("[T]he accused may introduce any legal evidence tending to prove that another person may have committed the crime with which the defendant is charged . . . [Such evidence] may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial" (footnotes omitted)).

Holmes, 547 U.S. at 326-327; see also Taylor v. Illinois, 484 U.S. 400, 410 (1988) ("The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence"); Crane v. Kentucky, 476 U.S. 683, 689-690 (1986) (permitting exclusion of evidence that "poses an undue risk of harassment, prejudice, [or] confusion of the issues") (citation and internal quotation marks omitted).

In this case, Petitioner presented Ground One to the Appellate Division on direct appeal. The Appellate Division rejected the claim as follows:

At trial, defendant offered evidence of another murder that he contended was factually similar to the charged offense and which occurred while defendant was imprisoned. Defendant's attorney contends that the judge improperly excluded this evidence.

Defendant hoped to present a police incident report, a tow truck report, a photograph of the car used in the alleged similar crime, and the testimony of two investigating officers. Defendant contended that the evidence would show that a "light-skinned Black male

approximately 19, 20 years of age, five-foot-eight, with a slim build" approached a man sitting on a crate outside a supermarket, "pumped bullets into" the man, and fled in a two-door burgundy Buick Regal that may have had tinted windows.

This type of third-party guilt evidence is admissible "only when 'the proof offered has a rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case.'" State v. Loftin, 146 N.J. 295, 345 (1996) . . . .  In addition, there "must be some link between the evidence and the victim of the crime." State v. Koedatich, 112 N.J. 225, 301 (1988) . . . .  "Thus, although evidence that another committed the offense may be admitted defensively, where third-party evidence shows no more than 'some hostile event' and leaves to 'mere conjecture' its connection with the case, it may properly be excluded." State v. Bull, 268 N.J. Super. 504, 512 (App. Div. 1993) . . .

Here, the proffered evidence indicated that the car was not the same model year as the car allegedly used in defendant's crime.  The third-party crime occurred five months after the crime charged, at a different time of day and in a different part of Newark.  While the third-party shooter might have fit the general description of the perpetrator in defendant's crime, there was eye-witness identification of defendant by one of the women who at one point wrestled with defendant in an attempt to stop the attack upon Gordon.  The third-party was completely unknown and the crime was not linked to any circumstances involved in defendant's crime, including motive.

Should the judge have admitted the third-party crime evidence, there would have ensued a lengthy and confusing separate inquiry into the third-party crime.  Given the extremely slight probative value of the proffered evidence, its admissibility was substantially outweighed by the undue consumption of time and confusion of issues that would have occurred had the evidence been admitted.  N.J.R.E. 403. Consequently, Judge Goldman did not abuse his discretion in excluding this evidence.

State v. Joseph, Docket No. A-684-01T4 slip op., pp. 3-5 (N.J. Super. Ct., App. Div., Jan. 6, 2003).

The transcript shows that Petitioner's counsel made the following proffer of evidence at trial:

10

[T]here was a male seated on a crate near an ice machine in Lasardo's (phonetic) supermarket, which is located at 84 19th Avenue, that the two-door Buick Regal, burgundy in color, came upon the scene, that a suspect described as follows.  The actor was a light-skinned Black male approximately 19, 20 years of age, five-foot-eight, with a slim build.  Suspect then jumped into a burgundy Buick Regal, two-door, and fled north on South 19th Street at - Avenue at a high rate of speed.  Registration was given was RY919T

Your Honor, I would submit that while the - model year of these two vehicles is apparently several years apart, that they are otherwise functionally identical.  They are two-door, burgundy color Buick Regals . . .

So in totality then what do we have?  We have virtually the identical vehicle.  We have virtually the same description, light-skinned, Black male, in our case the description is five-foot-six, in this case it's five-foot-eight, with slim build.  And this incident is - additionally, Judge, this isn't someone trying to rob the bodega.  They came up. they went to the guy, and they shot him.  They pumped bullets into him in a manner not dissimilar to the manner in - in this case.  Of course there was no pistol-whipping.  I'm not alleging it's a signature crime.  But if there had been a pistol-whipping, it would be virtually a signature.  Given that, Your Honor, and given the fact that both Mr. Barber and Mr. Joseph were incarcerated on July the 27th and for a number of days prior to that and a number of days after that . . .

State v. Joseph, Ind. No. 99-7-2629 transcript at pp. 48-50 (N.J. Super. Ct., Law Div., Jan. 29, 2001).

The New Jersey courts did not unreasonably apply Supreme Court precedent in concluding that the proffered evidence was not sufficiently linked to the Gordon homicide.  The proffered evidence did not show that a person other than the defendant shot Gordon.  The only link between the two crimes was that both involved a burgundy automobile.  But since the cars involved in the two incidents were several years apart in age and Petitioner proffered no evidence showing that the car involved in the second incident was the car involved in the Gordon shooting, there was nothing

11

linking the proffered evidence to this case.  The Appellate Division's weighing of the probative

value of the proffered evidence against its tendency to confuse the issues was a reasonable

application of Supreme Court precedent.  Petitioner is therefore not entitled to habeas relief on

Ground One.

B.  Confrontation Clause

In Ground Two, Petitioner argues that the admission of hearsay violated his rights under the

Confrontation Clause.  As factual support, Petitioner asserts:

> Investigator Mark Stolarz of the Essex County Prosecutor's Office
> testified that he was given the name of Nasir Turner as being an
> occupant in the burgundy car the night Ronald Gordon was shot.  The
> police arrested Turner and Turner admitted that he had told the police
> defendant confessed.  However, he later repudiated the statement as
> being the product of coercion.
>
> At no time did Frazier ever testify that he gave the inculpatory
> information.  On the contrary, had Frazier testified, he may have very
> well repudiated it as did Turner and raised a reasonable doubt as to the
> State's "motive" of the shooting being the result of an incident which
> occurred five years earlier . . . .
>
> Petitioner submits that the decision to allow inadmissible hearsay,
> with such a powerful inculpatory effect, denied him his constitutional
> right to confront his accuser (Jaleel Frazier).  The Appellate
> Division's rejection of the claim as being "without merit" is
> unreasonable and contrary to well established law by the United States
> Supreme Court as well as the Sixth Amendment right to confront
> one's accuser.

(Document 2 at pp. 11-12.)

The State argues that the Confrontation Clause was not violated because the testimony of

Investigator Stolarz occurred outside the presence of the jury.

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  This guarantee applies to both federal and state prosecutions.  See Pointer v. Texas, 380 U.S. 400 (1965).  In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court held that the Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination."  Id. at 53-54; see also Davis v. Washington, 126 S. Ct. 2266,  2273 (2006).  However, the rule in Crawford does not apply retroactively to convictions that became final on direct appeal before Crawford was decided.  See Whorton v. Bockting, 549 U.S. 406 (2007).  Under the law in effect at the time of Petitioner's crime and conviction, the Supreme Court had held that the Confrontation Clause does not bar admission of testimonial hearsay against a criminal defendant if the statement has adequate indicia of reliability, i.e., falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness."  Ohio v. Roberts, 448 U.S. 56, 66 (1980).

Petitioner raised this issue in his pro se supplemental brief on direct appeal.  The Appellate Division summarily rejected the claim without discussion.  The transcript of the proceeding in the Law Division shows that Investigator Stolarz testified outside the presence of the jury at a hearing before the judge to determine the reliability of Turner's prior inconsistent statement to police which inculpated Petitioner.  See State v. Joseph, Ind. No. 99-7-2629 transcript at pp. 173-186 (N.J. Super. Ct., Law Div., Jan. 25, 2001). The transcript unequivocally shows that, outside the presence of the jury, Stolarz testified that he questioned Nasir Turner because Jaleel Frazier, a member of the victim's family, had told Stolarz that Turner was a frequent passenger in the burgundy Buick.  Id. Moreover, while the jury heard the testimony of Turner and Turner's prior inconsistent statement,

13

the jury did not hear the testimony of Stolarz.  Id.  Because the hearsay to which Petitioner objects

was not admitted into evidence, the Confrontation Clause was not implicated.  Under these

circumstances, the New Jersey courts' rejection of Petitioner's Confrontation Clause claim was not

contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## C.  Suggestive Identification

In Ground Three, Petitioner argues that the in-court identification of Petitioner by Saleena

Gordon was tainted by a suggestive out-of-court photo identification.  As factual support, Petitioner

asserts:

> The prosecution's entire case hinged on identification.  Petitioner was
> identified in a photo array with others who all wore braided hair,
> whereas the assailant was described as having a close haircut . . . .
> The photo of petitioner was signed by one witness and an ink spot
> bled through the picture and it was still used for the completion of the
> process . . . .  The identification process was clearly tainted.  The trial
> court should have conducted a hearing pursuant to United States v.
> Wade, 388 U.S. 218 (1967).

(Docket Entry #2 at p. 12.)

Petitioner raised this claim on direct appeal in his pro se supplemental brief.  The Appellate

Division summarily rejected the claim without discussion.  Petitioner's pro se supplemental brief

clarifies the nature of the claim as follows:

> When the decedent was shot . . . the eyewitnesses all described the
> assailant whom shot decedent as a 5'6" or 5'7", 130-pound light-
> skinned African American male with "low-cut" hair and a "slim" face
> . . . .  This description was given on February 13, 1999 . . . .
>
> [O]n March 12, 1999 . . . , the state investigator and Det. Satnowski
> returned to the home of Saleena Gordon, the decedent's sister whom
> was an eyewitness of the shooting, and showed her the photo array
> which contained defendant.  Mysteriously, Ms. Gordon, allegedly
> after 60 to 90 seconds now identified the defendant as the assailant

14

who shot her brother.  Ms. Gordon's description went from a 5'6" or
5'7", 130-pound light-skinned African American make with a low -cut
hair and slim to defendant, who is 5'10", 140-pounds with long
braided hair . . . .

Defendant conten[d]s that the photographic array shown to Ms.
Gordon, the eyewitness, was void of any photos resembling the
assailants she described to the police as being those who shot her
brother . . . .  The photographs shown to her by the state investigator
were all of black males, with long braided hair.  Moreover, the state
investigator, upon returning back to the prosecutor's office, Homicide
Squad, claimed that he observed that after Ms. Gordon signed and
dated the rear of the photo of defendant in the photo array, a "spot of
ink had apparently bled through the front of the photo."  He further
claimed that because of this fact, the photo array was placed into
evidence without being shown to any other eyewitnesses.
Undoubtedly, the "ink-spot" only on defendant's photo was not
coincidental, and helped Ms. Gordon's selection.

(Docket Entry #11-6, pp. 22-26) (citations to record omitted).

        The Supreme Court has observed that improper pretrial identification procedures by police

may cause witnesses to misidentify a criminal.  See Simmons v. United States, 390 U.S. 377, 383

(1968).  An identification procedure may be deemed unduly and unnecessarily suggestive if it is

based on police procedures that create "a very substantial likelihood of irreparable

misidentification."  Id at 384.  In that case, "the witness thereafter is apt to retain in his memory the

image of the [misidentification] rather than that of the person actually seen, reducing the

trustworthiness of subsequent lineup or courtroom identification."  Id. at 383-84.  "It is the

likelihood of misidentification which violates a defendant's right to due process . . . .  Suggestive

confrontations are disapproved because they increase the likelihood of misidentification."  Neil v.

Biggers, 409 U.S. 188, 198 (1972).

Even if an identification procedure is unnecessarily suggestive, admission of the suggestive identification does not violate due process so long as the identification possesses sufficient aspects of reliability, Manson v. Brathwaite, 432 U.S. 98, 106 (1977), for reliability is the "linchpin in determining the admissibility of identification testimony," id. at 114; see also United States v. Wise, 515 F. 3d 207, 215 (3d Cir. 2008). The central question is "'whether under the totality of the circumstances the identification was reliable even though the confrontation procedure was suggestive." Brathwaite, 432 U.S. at 106 (quoting Biggers, 409 U.S. at 199); see also United States v. Maloney, 513 F. 3d 350, 355 (3d Cir. 2008). Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199. Significantly, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process. See Coleman v. Alabama, 399 U.S. 1, 7 (1970).

In this case, Petitioner raised this claim both on direct appeal in his pro se supplemental brief and before the Law Division in his petition for post-conviction relief. Although the Appellate Division rejected the claim without discussion, the Law Division rejected the claim as follows:

> [O]n the merits, a defendant must meet a threshold requirement by proffering "some evidence" of "impermissible suggestiveness" or a 6th Amendment violation. He utterly fails to do so here. This was not a stranger-to-stranger crime. The Petitioner and Gordon had an intimate relationship with the same woman. Gordon's sister had a close-up look at the Petitioner when she struggled with him in an effort to save her brother. There was no basis for holding a Wade

16

> hearing, and there is no showing had one been held, the identification
> would have been suppressed.

(Docket Entry #2 at p. 39.)

Petitioner argues in Ground Three that the in-court identification of Petitioner by Saleena Gordon was tainted by an impermissibly suggestive out-of-court photo identification.  He maintains that the out-of-court identification was suggestive in that, when Saleena signed and dated the photo of Petitioner, an ink spot bled through to the photo.  Petitioner does not contend that the ink spot was on his photo *before* Saleena selected it or that Saleena's identification of Petitioner was induced by the conduct of the police.  The New Jersey courts admission of Saleena Gordon's in-court identification of Petitioner was not contrary to, or an unreasonable application of the factors which the Supreme Court requires to be considered in evaluating the likelihood of misidentification.  See Biggers, 409 U.S. at 199.  Under these circumstances, the adjudication of petitioner's identification claims was not contrary to, or an unreasonable application of Biggers and other applicable Supreme Court jurisprudence.  Petitioner is not entitled to habeas relief on this claim.

D.  Unconstitutional Manner of Imposing Sentence

In Ground Four, Petitioner argues that "THE SENTENCE WAS IMPOSED AGAINST PETITIONER IN AN UNCONSTITUTIONAL MANNER, WHERE THE PROSECUTION DID NOT PROVIDE THE REQUIRED NOTICE AS PROVIDED BY THE STATUTE AND COURT RULES."  (Docket Entry #2 at p. 13.)  As factual support, he states:

> The New Jersey No Early Release Act, N.J.S.A. 2C:43-7.2 and R. 3:21-4(f) of the New Jersey Rules of the Court provide that the prosecutor "shall serve the defendant with "notice to impose a [NERA] sentence within 14 days of the return of the verdict.  The requirement of the notice, by use of mandatory language, gave petitioner a liberty interest protected by the due process clause . . . .

17

Petitioner submits that the Appellate Division decision in this regard was unreasonable.  First, the notice requirement is mandatory and gave petitioner a liberty interest protected by the due process clause.  Second, the prejudice is obvious when a NERA sentence is imposed rather than an ordinary term.  The difference between a NERA sentence and a non-NERA sentence is remarkable.  This is not a mere technical violation.  An ordinary sentence of 24 years would require petitioner to serve 1/3, or 8 years, whereas under the NERA he is required to serve 20 years, four months.  The statutory notice requirement was deleted in 2001 by the New Jersey Legislature as part of its revision of NERA.  L. 2001 c. 129 sec. 1.

(Docket Entry #2 at pp. 13-14.)

Petitioner presented this claim to the Appellate Division on direct appeal in his pro se

supplemental brief.  The Appellate Division rejected the claim as follows:

Defendant in his <u>pro  se</u> supplemental brief contends that because the State failed to timely seek application of NERA, the sentence imposed by Judge Goldman was unconstitutional.  At the time of defendant's sentencing, <u>R.</u> 3:21-4(f) required that the prosecutor serve the defendant with a "notice to impose sentence pursuant to . . . <u>N.J.S.A.</u> 2C:43-7.2 [NERA] . . . within 14 days of the . . . return of the verdict . . . ."  This rule was relaxed by the [New Jersey] Supreme Court on June 19, 2001 to require the prosecutor to serve defendant with a notice that the State will seek NERA sentencing either with the plea offer or at the arraignment/status conference, unless good cause is shown for an extension of time . . . .  But, at the time of defendant's sentencing, when the 14 day notice rule was still in effect, the prosecutor appeared at sentencing without having served such a notice.

Judge Goldman, noting that NERA was mandatory in this case, had the prosecutor "write out on a yellow sheet of paper a notice that he intends to assert that [NERA] applies."  The judge gave defendant an opportunity to express any prejudice that might result from the late notice.  Despite this opportunity, the defendant did not assert any prejudice, though defense counsel preserved defendant's rights.

In this case, by finding defendant guilty of aggravated manslaughter, the jury concluded beyond a reasonable doubt that defendant had committed a violent crime that met the dictates of the form of NERA,

18

which was then in effect . . . .  By its verdict, the jury fully complied
with State v. Johnson, 166 N.J. 523, 547, 549 (2001), which was to
apply prospectively to appeals pending as of the date of the decision,
February 28, 2001.  Technically, State v. Johnson did not apply to this
case, which was not appealed until October 10, 2001, but the sentence
complied with the [New Jersey] Supreme Court dictates in any event.

Thus, Judge Goldman was completely correct when he concluded that
NERA was mandatory in this case.  Defendant had an ample
opportunity during his trial to show that he did not commit a violent
crime through aggravated manslaughter.  In addition, defendant has
shown no prejudice by the late notice.  Therefore, we reject
defendant's argument that his NERA sentence was constitutionally
flawed by the prosecutor's failure to follow the then applicable notice
requirement.

State v. Joseph, Docket No. A-684-01T4 slip op., pp. 5-7.

To be sure, the imposition of a sentence by a judge or a jury which is not aware of

discretionary sentencing alternatives violates due process.  See Hicks v. Oklahoma, 447 U.S. 343

(1980).  In Hicks, a jury sentenced Hicks to a mandatory 40-year sentence for distributing heroin.

Because the habitual offender statute mandating the 40-year term was thereafter declared

unconstitutional, Hicks sought on direct appeal to have the 40-year sentence set aside; the state court

affirmed the conviction, reasoning that Hicks was not prejudiced because his sentence was within

the range that could have been imposed in any event.  The Supreme Court held that, where state law

required the jury to impose a discretionary sentence of at least 10 years, the imposition of a

mandatory 40-year sentence deprived Hicks of due process.

In this case, Petitioner does not assert that Judge Goldman improperly determined that the

NERA was mandatory.  In fact, the Appellate Division determined that Judge Goldman was correct

in finding that NERA was mandatory in Petitioner's case.  Rather, Petitioner argues that the

imposition of the NERA sentence violated due process because the State failed to serve a statutorily

required notice 14 days after return of the verdict, and instead served the notice at the sentencing

hearing.  However, Petitioner cites no Supreme Court holding that due process requires a notice

within 14 days of a guilty verdict regarding imposition of a mandatory period of parole ineligibility

at sentencing.  Moreover, the Supreme Court has held that one can have no constitutionally

protected liberty interest in a procedure.  See Olim v. Wakinekona, 461 U.S. 238, 250-51 (1983)

("Process is not an end in itself. . . .  The State may choose to require procedures for reasons other

than protection against deprivation of substantive rights, of course, but in making that choice the

State does not create an independent substantive right"); Griffin v. Vaughn, 112 F. 3d 703, 709 n.3

(3d Cir. 1997) ("The process afforded by state law is not relevant in determining whether there is a

state created right that triggers due process protection").

Petitioner has not shown that the New Jersey courts' rejection of his notice claim was

contrary to, or an unreasonable application of Hicks or other Supreme Court holdings.  Under these

circumstances, he is not entitled to habeas relief on Ground Four.

E.  Ineffective Assistance of Counsel

In Ground Five, Petitioner argues that he was denied the effective assistance of counsel  in

the following ways:  "(1) trial counsel's failure to take corrective action over juror taint (supra); (2)

trial counsel's failure to seek a Wade Hearing (supra); and (3) appellate counsel's failure to raise

these issues during direct appeal."  (Docket Entry #2 at p. 15.)  As factual support, Petitioner asserts:

> The trial judge conducted a partial evidentiary hearing on January 12,
> 2007 and filed a written opinion . . . .  It bears repeating here that the
> PCR Court went off the record in the middle of the argument on the
> juror taint issue.  (PCRT:63-9)  The discussion, rather continued off
> the record.

> Further, the PCR Court limited the hearing to the issue of the juror taint, in which it credited defense counsel's credibility over petitioner's, and in which it accepted counsel's "trial strategy" reasoning, even though the trial had concluded.  In these regards, the record is barren.  Instead, the PCR Court gave written reasons to deny relief without hearing arguments on the record.

> There was no way for the Appellate Division to base[] its decision by a "review of the record" (Pa26) because the discussions continued off the record.  Counsel admitted he had not filed any pretrial motions and basically accepted the State's version of the events.

(Docket Entry #2 at p. 16.)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.  See Strickland v. Washington, 466 U.S. 668, 686 (1984).

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687.  First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.

21

To satisfy the prejudice prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  As the Supreme Court explained,

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Strickland, 466 U.S. at 695-696.

The Supreme Court instructs that a court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one."  Strickland, 466 U.S. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

(1) Was counsel constitutionally ineffective in failing to request a Wade hearing?

Petitioner contends that counsel was constitutionally defective in failing to request a Wade hearing.  However, Petitioner was not entitled to a Wade hearing because the out-of-court identification procedure was not suggestive.  See supra.  As counsel cannot be constitutionally ineffective in failing to request a non-meritorious Wade hearing, this Court finds that the state

courts' adjudication of this ineffective assistance of counsel claim was not contrary to, or an unreasonable application of <u>Strickland</u> and its progeny.

(2) Was counsel constitutionally ineffective in failing to challenge juror number nine?

Petitioner also claims that counsel was deficient in failing to challenge juror number nine, where the juror advised the Court during trial that she knew Nakia Terry, a witness who testified for the prosecution and who had been intimately involved with the victim and Petitioner. Petitioner presented this claim in his petition for post-conviction relief. The Law Division held an evidentiary hearing on the claim, hearing the testimony of Petitioner and defense counsel. Judge Goldman rejected the claim in his written opinion as follows:

> Petitioner contends that he was deprived of effective assistance of counsel due to various failings of trial counsel. Petitioner's primary contention is that his counsel failed to seek the excusal of the juror who had admitted knowing a witness. Moreover, the Petitioner claimed that after the verdict his lawyer had said he would also move for a new trial because the Petitioner had gone to school with that same juror. At the PCR hearing, Kevin McLaughlin, a very experienced senior attorney with the Office of the Public Defender, testified that he had specifically given the Petitioner the opportunity to have the juror dismissed but that the Petitioner had instructed him not to seek the dismissal of the juror in question. The Petitioner denies giving any such instruction. To the contrary, he claims that he instructed McLaughlin to seek the juror's dismissal. The Court finds McLaughlin much more credible. He clearly remembered that the Court insisted that he speak to his client to confirm directly the initial decision he expressed at sidebar to keep the juror. He remembers doing so and receiving the instruction to try to keep the juror. He had no reason to disobey his client's instructions and had no reason to keep a juror over his client's objections. On the other hand, the Petitioner has an obvious motive to have a failure of recollection. It may well have been that he had thought he might have an advantage if a juror went to school with him and was from his neighborhood. Granting his choice of keeping the juror cannot be the basis of an ineffective assistance of counsel claim or a claim of judicial error.

(Docket Entry #2 at pp. 35-36.)

Petitioner raised this claim on appeal from the order denying post-conviction relief.  The

Appellate Division rejected this claim as follows:

> Defendant argues that  he was denied the effective assistance of
> counsel because his attorneys failed to take appropriate action with
> regard to Juror Number Nine.  Defendant claimed that this juror knew
> the victim and his family.  In addition, during the trial, the juror
> informed the court that she knew one of the State's witnesses . . . .
>
> We note that there is no evidence in the record that Juror Number
> Nine knew the victim or his family.  Moreover, during the trial, when
> the juror informed the court that she recognized the witness, defense
> counsel was given the opportunity to seek the removal of Juror
> Number Nine but, after consulting with defendant, chose to permit the
> juror to remain on the panel.  The judge instructed the other jurors that
> the fact that Juror Number Nine recognized the witness should not
> enter into their deliberations.  In addition, at the conclusion of the
> trial, defense counsel reserved the right to make a post-trial motion
> regarding the juror's participation in the case; however, at the PCR
> hearing, counsel testified that he decided not to file that motion
> because he determined that it would have been without merit . . . .
>
> We conclude that defendant failed to show that he was denied the
> effective assistance of counsel because of the manner in which his
> trial and appellate attorneys handled the issues regarding Juror
> Number Nine.

State v. Joseph, Docket No. A-0333-07T4 slip op., pp. 6-9 (N.J. Super. Ct., App. Div., Jan. 22,

2009).

The New Jersey courts rejected the claim, finding that counsel's performance was not

deficient where Petitioner had not asked defense counsel to challenge juror number nine.  Given the

testimony of defense counsel that Petitioner told him not to challenge juror number nine, and the

factual determination that defense counsel's testimony was credible, Petitioner can not show that the

New Jersey courts' decision was based on an unreasonable determination of the facts in light of the

evidence presented.  Moreover, the New Jersey courts' adjudication of the claim was not contrary to, or an unreasonable application of <u>Strickland</u>.  Petitioner is therefore not entitled to habeas relief on Ground Five.

F.  Certificate of Appealability

This Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  <u>See</u> <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition and denies a certificate of appealability.


s/Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**


Dated: August 3, 2010